IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

DEBBIE ANN PETRI, AS            §
ADMINISTRATOR OF THE ESTATE OF  §
PAUL TORRES, DECEASED, AND AS   §
GUARDIAN AND NEXT FRIEND OF     §
PATRICK DAMIAN TORRES, A MINOR  §
CHILD AND SOLE HEIR OF THE      §
ESTATE OF PAUL TORRES, DECEASED,§
                                §
           Plaintiffs,          §
                                §
TRINIDAD O. TORRES AND JESUITA  §
M. TORRES,                      §
                                §
           Intervenors,         §
VS.                             §   CIVIL ACTION H-09-3994
                                §   Consolidated with H-10-CV-122
                                §        and H-10-CV-497
KESTREL OIL & GAS PROPERTIES,   §
L.P., et al.,                   §
                                §
           Defendants.          §

## OPINION AND ORDER

Pending before the Court in the above referenced wrongful death and survival action[1] alleging negligence and gross negligence that caused the  death of Paul Torres, are  Plaintiffs "Debbie Ann Petri, *et al.*'s[2]" objection (#321) and Intervenors Trinidad O.

_____

[1] The Texas Survival Statute allows a decedent's heirs, legal representatives, and estates to bring actions for personal injury suffered by the decedent before his death.  Tex. Civ. Prac. & Rem. Code Ann. § 71.021.  The Texas Wrongful Death Statute, Tex. Civ. Prac. & Rem. Code Ann. §§ 71.002, 71.004, permits the surviving spouse, children and parents of the decedent to sue for their own damages resulting from the decedent's death.  *See THI of Texas at Lubbock I, LLC v. Perea*, 329 S.W. 3d 548, 568 (Tex. App.--Amarillo 2010, pet. denied).

[2] The Second Amended Original Complaint (instrument #120) identifies "Plaintiffs" as "DEBBIE ANN PETRI, AS ADMINISTRATOR OF THE ESTATE OF PAUL TORRES, DECEASED[,] AND ON BEHALF OF ALL

Torres and Jesusita M. Torres'[3] objections (#322) to the verified bills of costs filed by prevailing-party Defendants Wood Group Production Services, Inc. ("WGPS")(#309 for $31,620.50), Peregrine Oil & Gas II, LLC ("Peregrine")(#310 for $22,433.50), and Rotorcraft Leasing Company, LLC and Malcolm Good ("Rotorcraft" and "Good") (#311 for $14,048.02).   The Court granted summary judgment on all claims in favor of Defendants Shell Offshore, Inc., Shell Oil Company, Peregrine, WGPS, and Rotorcraft and Good against Plaintiffs on March 15, 2012 (#302, 303) and against Intervenors on March 28, 2012 (#312).

After the summary judgments were granted, the parties agreed to a temporary abatement of the Court's consideration of the pending objections to costs to allow Plaintiffs time to evaluate an offer from Defendants to not seek costs against Plaintiffs if Plaintiffs agreed not to appeal the Court's final summary judgments.   Because Patrick Damian Torres was still a minor, at the request of Debbie Ann Petri (#327) in order to protect the child's interest the Court appointed a guardian ad litem, Mr. Howard L. Steele, Jr. (#332) to review Defendants' offer.

---

WRONGFUL DEATH BENEFICIARIES AND AS GUARDIAN AND NEXT FRIEND OF P.D.T., A MINOR CHILD AND SOLE HEIR OF THE ESTATE OF PAUL TORRES, DECEASED." P.D.T.'s name is redacted in accord with Fed. R. Civ. P. 5.2(a).

[3] Intervenors are the parents of the deceased, Paul Torres, and thus wrongful death beneficiaries under the Texas Wrongful Death Act.  Tex. Civ. Prac. & Rem. Code Ann. §§ 71.004(a), 71.010.

While observing that in this Court's final summary judgment it is not clear that this Court intended to tax costs against the minor since the order simply imposes costs on "Plaintiffs," the guardian ad litem argued that a minor cannot be a party to a suit and therefore Defendants cannot be "prevailing parties" against him; thus costs cannot be assessed against the minor, but only against Petri as Administrator of Paul Torres' Estate and as Guardian and Next Friend of Patrick Damian Torres. #336.[4] The guardian ad litem further recommended that if the Court intended to issue a cost bill against the minor (who since turned eighteen years old, and thus reached majority, on August 5, 2012), in the absence of an indemnification or other agreement protecting Patrick Torres after he turns eighteen, it would be in Patrick's best interest for Plaintiffs to accept Defendants' offer. *Id.*

Nevertheless Petri rejected Defendants' offer and thus Plaintiffs' objections to the bills of costs are ripe.

Plaintiffs Debbie Ann Petri, *et al.* first object that costs cannot be awarded against the minor, Patrick Damian Torres, because (1) he is not guilty of any intentional or criminal conduct and (2) it is black letter law that a judgment cannot be entered against a

---

[4] WGPS disagreed with the guardian ad litem and filed a brief arguing that Patrick is a real party in interest whose legal capacity appeared in the suit and was represented by his mother as guardian and next friend and that Texas law allows costs to be taxed against a minor if so represented. #337. Peregrine joined in WGPS' brief. #338. Because Petri raises the issue in her objection to the bills of cost, the Court addresses it below.

minor.     Petri cites no authority for her contention.     She additionally asserts that a judgment against the child's mother "would be without precedent" because the only way a minor could bring a cause of action would be through a "next friend" and imposition of costs on the mother would have a chilling effect on all litigation.     Petri insists, "This Court cannot possibly penalize those persons legally required to bring a cause of action when the minor Plaintiff himself has no legal power to invoke the jurisdiction of the Court."   She further argues that costs should not be assessed against the Intervenors because they "were elderly, penniless and decrepit that testimony of them had to be obtained through their daughter [*sic*]."

Petri also objects that Peregrine's legal costs were paid for by WGPS and thus Plaintiffs are being billed twice for the same depositions, videotapes, documents, and attorney's fees that WGPS already paid for and should have provided at no cost to Peregrine. She further contends that the copies obtained by Peregrine were for the convenience of the parties and not necessarily for use in the case and at trial.   WGPS submitted a bill of costs for every deposition taken in the case regardless of whether it would be used by Defendant at trial, and nearly all the depositions were of either WGPS or Peregrine employees.   She complains that Rotorcraft, WGPS, and Peregrine have each claimed the same $350.00 cost for removing the case.   Petri further objects that Michael Baden, M.D.

was deposed twice, the second time by agreement because Defendants' counsel was not able "to complete the first deposition because of some extraneous documents which had no bearing on the ultimate outcome of the case." She also complains that Defendants submitted costs for video depositions of everyone deposed even though WGPS only noticed Jack Madeley, Debbie Petri, and Patrick Torres. In addition the video charges for Madeley were $1850.00, more than twice the cost of any other video. Petri further argues that under 20 U.S.C. § 1920(2), the Court can tax costs for "fees for printed *or* electronically recorded transcripts necessarily in use in the case," but not for both, as Defendants have requested. Rotorcraft should only be allowed costs associated with depositions of Plaintiffs or their medical expert, Dr. Michael Baden, whose second deposition should not be assessed against Plaintiffs, and eye witness Cal Rogers. It further contends that because Malcolm Good is a party and necessarily would be at trial, his deposition is not necessary for Defendants. WGPS' requested costs for private service of process for subpoenas should not be allowed because they were not served by the Marshal's Service and are therefore disallowed under Federal law. *Baisden v. I'm Ready Productions*, 793 F. Supp. 2d 970 (S.D. Tex. 2011)(fee for service of subpoenas by a private process server was not recoverable).[5] Finally costs

---

[5] *But see Katz v. State Farm Fire & Cas. Co.*, 2009 WL 3712588, *2 (E.D. La. 2009)("Parties routinely employ private process servers [and] . . . courts often allow the taxation of such costs,

for depositions of WGPS' experts, Jack Barnidge and Dr. Charles Wetli, should not be allowed because Defendants did not use their testimony in their motions for summary judgment and because they would have come to trial to testify live.

Intervenors' objections include that they are elderly and not in good health, they did not file or initiate the suit, they initiated little if any discovery, motions, etc. on their own behalf, and they did not notice any depositions.  If they are assessed anything, it should only be for the amount they increased Defendants' costs, if at all.  They argue that they continually asked Defendants counsel to go to mediation, but counsel would not agree.  They maintain that they should not be punished or penalized because of Defendants' refusal.  Finally, as to Wood Group Management Services ("WGMS"), Intervenors should not be responsible for costs because they had no viable cause of action against WGMS, which was dismissed as to Intervenors.

**Relevant Law**

Federal Rule of Civil Procedure 54(d) states, "Unless a

---

especially when locating witnesses is cumbersome"; allowing recovery of costs because the defense expert was not found at the address on his expert report and defendant could not provide his address and because plaintiffs had to make several attempts to serve other witnesses of defendants), *citing Compton v. Taylor*, Civ. A. No. H-05-4116, 2006 WL 1789045, *3 (S.D. Tex. June 27, 2006); *Landry v. St. James Parish School Board*, No. Civ. A. 99-1438, 2000 WL 1741886, *1 (E.D. La. Nov. 22, 2000); and *Alfex Corp. v. Underwriters Laboratories, Inc.*, 914 F.2d 175, 178 (9th Cir. 1990).

federal statute, these rules, or a court order provides otherwise, costs--other than attorney's fees--should be allowed to the prevailing party."  There is a strong presumption under this rule that the court will award costs to a prevailing party; thus the prevailing party is *prima facie* entitled to costs unless the losing party carries its burden of overcoming this cost-shifting presumption.  *Schwarz v. Folloder*, 767 F.2d 125, 131 (5th Cir. 1985), *citing Delta Air Lines, Inc. v. August*, 450 U.S, 346, 352 (1981); *Manderson v. Chet Morrison Contractors, Inc.*, 666 F.3d 373, 384 (5th Cir. 2012).  The district court may not deny or reduce a prevailing party's cost request unless it provides a good reason for doing so.  *Schwarz*, 767 F.2d at 131; *Manderson*, 666 F.3d at 384.  The Fifth Circuit has not determined what reasons justify withholding costs from a prevailing party,[6] but it has held that the fact that a suit may have been brought in good faith and characterized by proper conduct, alone, is not sufficient to

---

[6] In *Pacheco* the Fifth Circuit observed that in 10 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2668, at 234 (1998), Wright and Miller identified the following as some reasons other circuits have withheld costs from a prevailing party: "(1) the losing party's limited financial resources; (2) misconduct by the prevailing party; (3) close and difficult legal issues presented; (4) substantial benefit conferred to the public; and (5) the prevailing party's enormous financial resources," as well as the losing party's good faith in prosecuting the action **when combined with one or more of these factors**.  448 F.3d 783, 794 (5th Cir.), *cert. denied*, 549 U.S. 888 (2006).  Nevertheless the panel stated, "These reasons are enumerated only for the purpose of exposition.  We do not decide whether any of these is a sufficient reason to deny costs."  *Id.* n.18.

justify denying a prevailing party's cost request. *Pacheco v. Mineta*, 448 F.3d 783, 794 (5th Cir.), *cert. denied*, 549 U.S. 888 (2006).

Title 28 U.S.C. § 1920 makes clear that the court may only tax certain costs as expenses:

(1) Fees of the clerk and marshal;
(2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
(3) Fees and disbursements for printing and witnesses;
(4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
(5) Docket fees under section 1923 of this title;
(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses and costs of special interpretation services under section 1828 of this title;

Expenses not authorized by statute or contract must be borne by the party incurring them. *Baisden v. I'm Ready Productions, Inc.*, 793 F. Supp. 2d 970, 973 (S.D. Tex. 2011), *citing Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437 (1987), and *Coats v. Penrod Drilling Corp.*, 5 F.3d 877, 891 (5th Cir. 1993)("district court may decline to award costs listed in the statute, but may not award costs omitted from the list").  If no objection is made to a request for costs, it is presumed that they were necessarily obtained for use in the case and costs will be taxed. *Baisden*, 793 F. Supp. 2d at 973.  If an objection is made, the party seeking the costs has the burden of verifying that the costs were necessarily incurred in the case and not simply spent in preparation and litigation of the case. *Id., citing Fogleman v. ARAMCO*, 920 F.2d

278, 286 (5th Cir. 1991).

The Fifth Circuit has held regarding the service of subpoenas that "'absent exceptional circumstances, the costs of a private process server are not recoverable under Section 1920.'" *Baisden*, 793 F. Supp. 2d at 974-75, *quoting Marmillion v. American International Ins. Co.*, 381 Fed. Appx. 421, 431 (5th Cir. 2010), *citing Cypress-Fairbanks Indep. Sch. Dist.*, 118 F.3d 245, 257 (5th Cir. 1997), *cert. denied*, 522 U.S. 1047 (1998).

The Judicial Administration and Technical Amendments Act of 2008, Pub. l. No. 110-406, 122 Stat. 4291, 4292, amended Section 1920(2)("Fees for printed or electronically recorded transcripts necessarily obtained for use in the case" are taxable) to allow a judge to tax as costs the fees for electronically recorded transcripts so the cost for videotaped depositions is now recoverable. *Baisden*, 793 F. Supp. 2d at 976, *citing S&D Trading Academy, LLC v. AAFIS, Inc.*, 336 Fed. Appx. 443, 450-51 (5th Cir. 2009), *cert. denied*, 130 S. Ct. 1054 (2010). When a deposition is taken, if it could reasonably be expected to be used for trial preparation, rather than just discovery or mere convenience of counsel, it may be included in the costs of the prevailing party. *Id*. at 977, citing *Fogleman*, 920 F. 2d at 285 ("we have consistently held that a deposition need not be introduced into evidence at trial in order to be 'necessarily obtained for use in the case'"). Similarly a videotaped version of the deposition

available in a stenographic transcript is also taxable if used for trial or trial preparation, and not just for convenience of counsel. *Id., citing id.* The district court makes the factual determination whether the depositions are necessarily obtained for use during trial or trial preparation. *Id., citing Ramonas v. West Virginia University Hospitals-East, Inc.*, Civ. A. No. 3:08-CV-136, 2010 WL 3282667, *8 (N.D. W.Va. Aug. 19, 2010)("In order for a party to cover for *both* transcription and videotaping costs--the prevailing party must show that both the transcript and video were 'necessarily obtained for use in the case'"), and *Farnsworth v. Covidien, Inc.*, No. 4:08CV01689 ERW, 2010 WL 2160900, *2 (E.D. Mo. May 28, 2010)(costs for both videotaping and transcription of depositions awarded "because at the time of the depositions, it was reasonable to believe that videotapes would be necessary at trial if any of the witnesses were unable to testify in person, or if a witness testified inconsistently with his or her deposition testimony. Additionally, it cannot be said that a videotape of a deposition is wholly duplicative of a transcript of the same deposition because the transcript only captures verbal communication, while the videotape captures both verbal and nonverbal communication."). *See also Baisden*, 793 F. Supp. 2d at 976-77 (videotape depostion costs and deposition transcripts are both recoverable costs but the requesting party still bears the burden of showing that the different versions of the deposition

were reasonably obtained for use in the case).

Furthermore necessary expenses for witnesses who appear for deposition and/or trial are recoverable under Section 1920 to the extent that they satisfy 28 U.S.C. § 1821, which authorizes travel reimbursement and a $40 *per diem*. Baisden, 793 F. Supp. 2d at 979-80. Section 1821 "'does not . . . permit the award of 'actual costs,' but limits such awards to the per diem rate.'" *Id*. at 980, *citing United Teacher Associates Ins. Co. v. Union Labor Life Ins. Co.*, 414 F.3d 558, 575 n.12 (5th Cir. 2005)(holding the district court abused its discretion when it awarded subsistence costs in excess of the authorized per diem amount under Section 1821(d)(2)).

Costs may be imposed on nonprevailing-party intervenors. *Carter v. General Motors Corp.*, 983 F.2d 40, 44 (5th Cir. 1993)(affirming imposition of costs on intervening party); *Horton v. Lawrence County Bd. of Educ.*, 578 F.2d 147, 151 (5th Cir. 1978)("Costs are taxed against the plaintiff-intervenors."). In *American Trucking Associations, Inc. v. I.C.C.*, 666 F.2d 167, 169 (5th Cir. 1982), *cert. denied*, 460 U.S. 1022 (1983), the Fifth Circuit concluded that with regard to costs, "intervenors are treated 'like any other prevailing or losing party, as the case may be.'" *Id., citing Delta Air Lines, Inc. v. CAB*, 505 F.2d 386, 388 (D.C. Cir. 1974). The panel further opined,

> In deciding the costs to be awarded to or taxed against
> intervenors, the . . . court may consider not only the

obviously paramount factor of victory or defeat, but also
"the relative merit of the intervenor's contribution, the
novelty of the issues, the necessity of intervention, and
the public interest," as well as any other factors that
appear relevant.   If the intervenor did not make a
substantial contribution beyond that afforded by one of
the parties already involved, it may be denied costs
despite the fact that it supported the ultimate victor
[or loser].   If the intervenor made a substantial
contribution to the resolution of the case, the value of
its independent contribution should be considered, but
the amount claimed by it as costs should be reduced to
reflect in some measure the amount of material
duplicative of exposition in the briefs of the party
whose position it supported.

*Id.* (citations omitted).   "[A]n intervenor's relative inactivity in
a lawsuit may influence a court's exercise of discretion." *Carter*,
983 F. 2d at 44 (but finding that the district court did not abuse
its discretion in imposing joint and several liability on
intervenor and plaintiffs).

## Court's Decision

The Court addresses Petri's contention that the Court cannot
assess costs against a minor, or given Patrick Torres' current
adult status, costs incurred while the litigant was a minor, and
that taxing Petri in her representative capacity would have a
chilling effect on such representation which is mandatory to
protect a minor's right to sue.

Minors "are considered to be under a legal disability and are
therefore unable to sue or be sued in their individual capacities;
such persons are required to appear in court through a legal
guardian, a "next friend," or a guardian ad litem. *Austin Nursing*

-12-

*Center, Inc. v. Lovato*, 171 S.W. 3d 845, 849 (Tex. 2005)[7]; Tex.
Probate Code §§ 601(14), 773. *See also A.G. v. Leander ISD*, No. A-
09-CA-057 LY, 2009 WL 3350148, *3 (W.D. Tex. Oct. 14, 2009)("In
Texas, a minor plaintiff must be represented by a guardian or next
friend to bring suit."), *citing Kaplan v. Kaplan*, 373 S.W. 2d 271,
273 (Tex. App.--Houston 1963, no writ).     Under Texas law, a
mother has "the right to represent [her minor child] in legal
action and to make other decisions of substantial legal
significance concerning the child."   Tex. Fam. Code Ann. §
151.001(a)(7).  Even though Petri brought suit as Patrick's "next
friend," Patrick was the actual claimant.   *In re KC Greenhouse
Patio Apartments, LP*, ___ S.W. 3d ___, 2012 WL 3525615, *2 (Tex.
App.--Houston [1st Dist.] Aug. 16, 2012), *citing Intracare Hosp. N.
v. Campbell*, 222 S.W. 3d 790, 795 (Tex. App.--Houston [1st Dist.]
2007, no pet.), and *Byrd v. Woodruff*, 891 S.W. 2d 689, 704 (Tex.
App.--Dallas 1994, writ dism'd by agr.)("The next friend is present
in a representative capacity only, and the minor remains the real
party in interest.").     Furthermore, "the authority of a next
friend expires when the minor plaintiff reaches the age of
majority." *A.G.,* 2009 WL 3350148, *3*, citing Kaplan*, 373 S.W. 2d
at 275 [*in accord, Gonzales v. United States*, Civ. A. Nos. B-06-

---

[7] The same is true of a decedent's estate, which "'is not a
legal entity and may not properly sue or be sued as such.'"
*Lovato*, 171 S.W. 3d at 849, *citing Price v. Estate of Anderson*, 522
S.W. 2d 690, 691 (Tex. 1975).   Petri appears in a representative
capacity for Torres' estate and his minor son.

169, B-06-186, 2007 WL 1729657, *2 (S.D. Tex. June 13, 2007)("a next friend's authority to act in a representative capacity expires when the minor attains capacity by reaching the age of majority")]. The age of majority in Texas is eighteen. Tex. Civ. Prac. Rem. Code Ann. § 129.001. Thus costs could be properly assessed against Patrick both before and after he reached majority in August 2012.[8]

In a case brought under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1401 *et seq.*, brought by next friends Mr. and Mrs. Barry F., the undersigned judge awarded costs to the prevailing school district against Plaintiff minor student Michael F. without distinguishing between the minor and his "next friends." *Cypress-Fairbanks Indep. Sch. Dist.*, 931 F. Supp. 474, 484 (S.D. Tex. 1996). On appeal, 118 F.3d 245, 256-57 (5th Cir. 1997)(affirming as modified), *cert. denied*, 522 U.S. 1047 (1998), Michael's parents argued *inter alia* that the district court's award of substantial costs was "inequitable and violates the spirit if not the letter of the IDEA" and would have "a chilling effect on the willingness of parents to contest school district decisions

--------------------------------------------------

[8] Federal Rule of Civil Procedure 17(a)(3) provides that the court "may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action." Because there is no dispute that Patrick is now eighteen years old, the Court presumes that he be formally substituted into this in place of his guardian and next friend, Debbie Ann Petri. Petri is still a losing party in this suit in her capacity as administrator of the Estate of Paul Torres.

vitally affecting their children by putting such parents at risk of being penalized with a substantial cost assessment, even when they have managed to prevail at the administrative hearing level," as Michael F.'s parents had.   The "next friends" argued, "Other parents will now have to think long and hard . . . before suing the administrative procedures that Congress took great pains to make available to them under the IDEA for the protection of their children's interests." *Id.* at 257.   The Fifth Circuit's responded,

> We cannot disagree with the equitable aspects of Michael's parents arguments on this point.  But, as Cy-Fair ISD has noted, the IDEA does not prohibit an award of costs to a school district as a prevailing party in district court even when the parents have prevailed at the administrative level.  Consequently, the district court could, without abusing its discretion, interpret this silence as permission to impose costs "as of course" under Rule 54(d)(1).

*Id.* Here Petri has not cited any authority for not following the law regarding taxing costs against the losing party because it was a "next friend" nor precedent within this Circuit for equitable exceptions.  Moreover, Patrick's attaining majority has mooted the issue.

    The Fifth Circuit went on to address Plaintiffs' objections to individual items in Cy-Fair's bill of costs and affirmed the district court's awards except for three modifications where it found that the district court abused its discretion: (1) for a private process server because there was nothing exceptional about

the parties or the nature of the case to justify them, (2) excessive airfare because they waited too long without justification to purchase the ticket at a reasonable price,[9] and (3) depositions of two of the school district's own witnesses who the school district had to have known would be required to testify at trial and whose depositions therefore were "surplusage" and not "reasonably necessary." *Id.* at 257-58.  It expressly stated, "In conclusion, we hold that the district court did not abuse its discretion in general when it elected to tax costs to Michael's parents . . . ."  Thus this Court finds that it is permitted to tax costs against Debbie Ann Petri in her capacity as Administrator of the Estate of Paul Torres and as guardian and next friend of Patrick Damian Torres.

Intervenors have argued that costs should not be assessed against them because they are indigent.  While the Court sympathizes with possible financial or health constraints, as stated by the district court in *Shaw v. Hardberger*, Civ. A. No. SA-06-CV-751-XR, 2010 WL 1424726, *1 (W.D. Tex. April 7, 2010), *appeal dismissed*, 2011 WL 1519134 (5th Cir. Apr. 21, 2011), indigency is not a reason to permit a losing party to avoid costs:  "Allowing indigent parties to avoid court costs based on nothing other than

---

[9] Title 28 U.S.C. § 1821(c)(1) allows for travel expenses of a witness who travels by common carrier but requires that "'a witness shall utilize a common carrier at the most economical rate reasonably available.'"  118 F.3d at 257 n.36.

their indigent status appears to contravene Congress's intent in stating that judgment may be rendered for costs at the conclusion of a proceeding brought *in forma pauperis* 'as in other proceedings.' 28 U.S.C. § 1915(f)(1)." *See also Washington v. Patlis*, 916 F.2d 1036, 1039 (5th Cir. 1990)(pointing out that the Fifth Circuit has held that the statutory language of § 1915 "indicates that Congress intended for qualified litigants to be able to proceed without advancing costs, but that they may be ultimately liable for costs."), *citing Lay v. Anderson*, 837 F.2d 231, 232 (5th Cir. 1988)(*per curiam*).

Petri, *et al.* filed this wrongful death and survival action on November 3, 2009 and effected service on November 16, 2009.  The case was removed on December 15, 2009.  Intervenors voluntarily moved for leave to file a petition in intervention (#35) and filed their proposed pleading (#36) on April 19, 2010, were represented by counsel, and never moved to proceed *in forma pauperis*.  Nor have they presented any evidence of indigency.  They remained active in the suit through final summary judgment.  The Court finds Intervenors should be jointly and severally liable for costs with Plaintiffs as losing parties.

Plaintiffs claim they are being double billed because Peregrine's legal costs were paid for by WGPS.  Peregrine and WGPS respond, and the record evidences, that Wood Group and Peregrine are separate and distinct entities, both were sued by Plaintiffs,

they are represented by separate counsel, pled different defenses, and filed distinctly different summary judgment motions. Thus any costs utilized by either attorney in defending Peregrine and WGPS were reasonable and necessary to provide a defense for each client. Moreover Plaintiffs' contention that the depositions, videotapes, and documents used by WGPS should have been provided free to Peregrine would require WGPS and Peregrine to violate the terms of the court reporters' or record service's agreements and deprive them of the right to payment for their services to each party. Finally Plaintiffs fail to cite any authority on point for the proposition that because Peregrine is being defended under an indemnity agreement from WGPS, only one of them can recover its costs. Nor was the Court able to find any such authority. The Court concludes that for the reasons stated, Plaintiffs' objections should be overruled.

The Court addresses the objections to individual items of requested costs.

WGPS requests $425.00 for fees for service of summons and subpoena. As noted, costs for private process servers are not authorized by § 1920. *Cypress-Fairbanks ISD*, 118 F.3d at 257. Nor has WGPS shown exceptional circumstances, and thus the costs of a private process server are not recoverable. *Id.; Marmillion*, 381 Fed. Appx. at *10. Furthermore WGPS has stated that it does not contest this objection. #326 at p. 17. Thus the Court reduces

WGPS's bill of costs by that amount.

Plaintiffs complain that Peregrine, WGPS, and Rotorcraft are each seeking to recover the $350 removal fee. Peregrine and WGPS respond, and the record reflects, that Plaintiffs filed three different lawsuits, each of which was removed by a different Defendant (Peregrine, WGPS, and Rotorcraft) and which were ultimately consolidated into this action, as evidenced by instruments #24, 26. The Court finds each of the three removal fees is taxable.

Plaintiffs complain that fees for depositions are not recoverable because they were not reasonably necessary and because "the vast majority of all depositions noticed were either of Wood Group or Peregrine employees."

Insisting that all the depositions taken in this suit would have been used in trial preparation, including for witness preparation, motions in limine, expert challenges, pretrial motions, trial motions, and impeaching and cross-examining witnesses, and where witnesses were unavailable at trial, WGPS and Peregrine respond that it was Plaintiffs who noticed or cross-noticed most of depositions, as reflected in its bill of costs submitted by WGPS (#309 at pp. 1-2; #326 at pp. 8-9),[10] and both

_____

[10] WGPS, with justification, maintains, #326 at p. 18,

Plaintiffs have driven the costs of this case from the outset of this lawsuit.  Plaintiffs filed numerous state court actions, each requiring a removal to federal court

counsel had to attend all and to obtain their transcripts and videotapes to effectively protect their clients and to obtain relevant testimony that could be used in Peregrine's summary judgment motions, trial preparation and at trial.  Peregrine used the transcripts of Cal J. Rogers, Thomas Motschman, Clyde Self, Terryl Gipson, and Jack T. Madeley in its motion for summary judgment (#125 and Exs. E, F, G, H, and I, respectively)).  Furthermore Peregrine had to depose Plaintiffs' and Defendants' experts to verify and confirm their opinions if those opinions could be challenged at trial.   The remaining depositions were required to confirm all witnesses' positions regarding the drowning of Paul Torres, to determine their importance at trial, and to protect Peregrine's defenses.  Plaintiffs' objection that Dr. Baden was deposed twice because Defendants' attorneys ran out of time is inaccurate.  Instead Dr. Baden's deposition on May 25, 2011 was recessed because *Plaintiffs*' counsel had a scheduling conflict.  #329, Tr., of Baden Dep., Ex. A, p. 4, l.8-p. 5, l. 7; p. 140, ll. 1-16; #326, Ex. 2, same.  Furthermore, Dr. Baden's deposition was continued telephonically on June 13, 2011.  Although Plaintiff complains that some deposition fees are higher than others, that

---

and ultimately consolidated to alleviate at least some costs and waste of judicial resources, and Plaintiffs took the vast majority of depositions in this case.  In addition, the numerous docket entries reflect motion upon motion mainly filed by the Plaintiffs in this case and requiring supporting exhibit upon exhibit to defend against Plaintiffs' motions.

disparity is due to the fact that some depositions last longer than others, and thus the transcripts also varied in length; the cost of Madeley's deposition was greater than the others because it went on much longer.  In addition, Peregrine submits an affidavit from its attorney, Robert D. Brown, Ex. B, stating that "the fees for printed or electronically recorded transcripts were reasonably necessary and obtained for use in this case" and "reflect reasonable market rates and charges for the services and materials provided, based upon my experience as an attorney practicing litigation in Texas since 1990." WGPS provides an affidavit from its counsel, Roger L. McClear, #326, Ex. 1, basically with the same affirmations in support of its bill of costs.  As noted above, now costs may be taxed for videotaped depositions. *Baisden*, 793 F. Supp. 2d at 976, *citing S&D Trading Academy*, 336 Fed. Appx. at 450-51.  Moreover the Court may tax costs for both video and stenographic versions of the depositions. *Baisden*, 793 F. Supp. 2d at 976-77 because Defendants might reasonably need the written transcript to submit page/line deposition references when impeaching witnesses and playing parts of the video version at trial.  They would also be needed for *Daubert* motions, motions in limine, and motions to strike evidence, as reflected by the record of this litigation.  The videotape might reasonably be useful to address a witness' credibility or to impeach at trial.

The Court finds Peregrine's and WGPS' responses are reasonable

and show these depositions, mainly noticed by Plaintiffs, and their transcripts and videos were necessary for counsel to defend  and prepare their cases for trial, and that the record and  Mr. Brown and Mr. Cleary's affidavits support Defendants' explanations. Therefore it overrules Plaintiffs' objections relating to depositions.

In sum, the Court finds Defendants have met their burden to show that the requested costs, other than WGPS's private service fee of $425.00, were necessarily incurred for use in the case and are appropriate under Section 1920.

Accordingly, for the reasons stated above, the Court

ORDERS that Plaintiffs and Intervenors' objections are OVERRULED except for the $425.00 private service fee.  Therefore WGPS is entitled to recover from Plaintiffs and Intervenors costs in the amount of $31,195.50; from Peregrine, $22,433.50; and from Rotorcraft and Good, $14,048.02.

**SIGNED** at Houston, Texas, this 17th day of January, 2013.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE